**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 46757**

| | |
|---|---|
| STATE OF IDAHO, | ) |
| | ) **Filed: June 23, 2020** |
| Plaintiff-Respondent, | ) |
| | ) **Melanie Gagnepain, Clerk** |
| v. | ) |
| | ) **THIS IS AN UNPUBLISHED** |
| JOSE ELBERTO CHAVES, | ) **OPINION AND SHALL NOT** |
| | ) **BE CITED AS AUTHORITY** |
| Defendant-Appellant. | ) |
| | ) |

Appeal from the District Court of the Third Judicial District, State of Idaho, Canyon County. Hon. Christopher S. Nye, District Judge.

Judgment of conviction for sexual battery of a minor child sixteen or seventeen years of age, <u>vacated</u>; <u>case remanded</u>.

Eric D. Fredericksen, State Appellate Public Defender; Andrea W. Reynolds, Deputy Appellate Public Defender, Boise, for appellant.

Hon. Lawrence G. Wasden, Attorney General; Jeffrey D. Nye, Deputy Attorney General, Boise, for respondent.

_____

GRATTON, Judge

Jose Elberto Chaves appeals from the district court's judgment of conviction for sexual battery of a minor child sixteen or seventeen years of age. Chaves argues that the district court erred by failing to exclude certain evidence. For the reasons set forth below, we vacate and remand the case for a new trial.

**I.**

**FACTUAL AND PROCEDURAL BACKGROUND**

Chaves was charged with sexual battery of a minor child sixteen or seventeen years of age, Idaho Code § 18-1508A, and a mandatory minimum sentencing enhancement, I.C. § 19-2520G(2). The charge arose after a mother discovered that Chaves was engaging in inappropriate snapchat conversations with her sixteen-year-old child (B.B.) and reported the messages to police. An investigation ensued wherein B.B. admitted that Chaves had B.B.

1

perform oral sex on him on October 4, 2016. Subsequently, the State charged Chaves with the above-listed crime. Chaves' case proceeded to trial.

At trial, B.B. testified that he met Chaves while working at an onion company and the two began communicating through text messages and snapchat. B.B. explained that Chaves provided him with marijuana at least three to four times per week. B.B. testified that Chaves would pick him up while his parents were at work. They would drive to their "usual spot" and smoke marijuana. B.B. testified that he never had to pay Chaves for the marijuana. B.B. testified that on October 4, 2016, he met up with Chaves to smoke marijuana and they drove to their "usual spot." After B.B. finished smoking, B.B. testified that Chaves unbuckled his pants, pulled out his penis, and nudged B.B. toward it. B.B. testified that he performed oral sex on Chaves.

The defense called Miguel Estrada to testify as an alibi witness on behalf of Chaves. Estrada testified that he was with Chaves on the evening of October 4, 2016, smoking marijuana at Lake Lowell. On cross-examination, the State asked Estrada about a calendar that he had filled out during an interview at the prosecutor's office eleven days prior to trial. In response to this inquiry, defense counsel asked to approach the bench and argued that the calendar was improper impeachment evidence because it was not disclosed to the defense prior to trial. The district court overruled the objection and the prosecutor proceeded to question Estrada about the calendar. The calendar was made during the prosecution's interview with Estrada, was written on and signed by Estrada, and noted various days that Estrada was with Chaves in October of 2016. However, the calendar noted that Estrada was not with Chaves on October 4, 2016. After further questioning from the prosecution regarding the inconsistencies in his testimony and the calendar, Estrada stated, "Yeah. Look. I don't recall the days when we hanged out but we smoked a lot and that's all I got to say. It was a bunch of days."

In addition, Chaves testified on his own behalf. He admitted that he provided B.B. with marijuana and that he had snapchat conversations with B.B. However, Chaves denied having B.B. engage in oral sex. Instead, he testified that he was with Estrada on October 4, 2016, smoking marijuana at Lake Lowell.

During rebuttal, the State called Tony Thompson, an investigator from the prosecutor's office, to testify. Thompson was a witness to the prosecutor's interview with Estrada. Chaves objected because Thompson was not disclosed as a rebuttal witness prior to trial. The court

overruled Chaves' objection. Thompson testified that he was present during Estrada's interview. He stated that Estrada was asked "[a]t least three times" whether he was with Chaves on October 4 and each time Estrada said that he was not. Thompson testified that he recorded the interview. Over Chaves' objection, the State admitted the calendar and an audio recording of Estrada's interview, which the State played for the jury.

The jury convicted Chaves of sexual battery of a minor. The district court sentenced Chaves to a unified term of twenty years with fifteen years determinate. Chaves timely appeals.

## II.

## ANALYSIS

Chaves argues that the district court erred in permitting the State to present the impeachment evidence, including the calendar, audio recording, and Thompson's testimony, because it was not disclosed to the defense during discovery. In addition, Chaves contends the State cannot meet its burden of showing admission of the evidence was not harmless. We will address each of these contentions below.

### A. Admission of Evidence

Chaves argues that the district court erred by: (1) permitting the State to question Estrada regarding the calendar that he completed during his interview at the prosecutor's office; (2) admitting the calendar and the audio recording of the interview; and (3) permitting Tony Thompson to testify for the State as a rebuttal witness. Chaves contends that pursuant to *State v. Montgomery*, 163 Idaho 40, 408 P.3d 38 (2017) and Idaho Criminal Rule 16, this evidence should have been disclosed prior to trial and its admission was an abuse of discretion. In response, the State concedes that the calendar and audio recording were required to be disclosed under I.C.R. 16(b)(4) and Thompson's testimony was required to be disclosed pursuant to the Idaho Supreme Court's holding in *Montgomery* and I.C.R. 16(b)(6). However, the State contends that, pursuant to *Montgomery*, the district court did not abuse its discretion in allowing the State to present the evidence because the trial court has broad discretion to fashion a sanction for a violation of the discovery rules. Because the State concedes that the evidence should have been disclosed during discovery under I.C.R. 16, we need only analyze whether its admission was an abuse of discretion.

The decision whether to impose discovery sanctions is within the discretion of the trial court. *State v. Anderson*, 145 Idaho 99, 104, 175 P.3d 788, 793 (2008). When a trial court's

discretionary decision is reviewed on appeal, the appellate court conducts a multi-tiered inquiry to determine whether the lower court: (1) correctly perceived the issue as one of discretion; (2) acted within the boundaries of such discretion; (3) acted consistently with any legal standards applicable to the specific choices before it; and (4) reached its decision by an exercise of reason. *State v. Herrera*, 164 Idaho 261, 270, 429 P.3d 149, 158 (2018). "When imposing discovery sanctions, the court should balance the equities and make the punishment fit the crime. The judge should balance the culpability of the disobedient party against the resulting prejudice to the innocent party." *Anderson*, 145 Idaho at 105, 175 P.3d at 794.

In *Montgomery*, the State charged the defendant with unlawful discharge of a firearm at an occupied vehicle. At trial, the defendant testified that all of the bullets that he fired were recovered and that he fired the shots in self-defense because the vehicle had bumped into him causing multiple contusions and a displaced hip. On rebuttal, the State presented two undisclosed witnesses over the defendant's objection. The first witness was an investigating officer who had examined the crime scene. The investigating officer testified that only two of the five bullets were recovered from the scene. In addition, the State presented a booking deputy. The booking deputy testified that shortly after the incident and in response to routine booking questions, the defendant told him that he was in good health and had no injuries.

On appeal, Montgomery asked that the Idaho Supreme Court overrule its prior precedent and conclude that rebuttal witnesses must be disclosed under the plain language of I.C.R. 16(b)(6). Thus, the Idaho Supreme Court squarely addressed the issue of whether the State has an obligation under I.C.R. 16(b)(6) to disclose rebuttal witnesses. The Court concluded:

> The answer is yes, but we are mindful of the practical difficulties this rule can present. Despite efforts to scour reports, medical records, and other documents in search of the names of people who have knowledge of relevant facts who may be called to testify, names will undoubtedly be missed. Experience also tells us that trials are unscripted and testimony can be unexpected. It may not be obvious that someone has knowledge of relevant facts since what is "relevant" may turn on a single, unanticipated answer given by a defendant at trial. The trial courts have considerable discretion under Idaho Criminal Rule 16(b)(6) to determine whether a particular rebuttal witness should have been disclosed and they have considerable discretion under Idaho Criminal Rule 16(k) to fashion an appropriate remedy if there is a violation of the disclosure requirement. Nothing in our decision today should be taken as a bright-line rule that the failure to disclose a rebuttal witness will result in the exclusion of that witness.

*Montgomery*, 163 Idaho at 45, 408 P.3d at 43 (internal citations omitted). Thereafter, the *Montgomery* Court applied its newly articulated rule to the facts of the case and determined that both of the witnesses should have been disclosed in response to Montgomery's I.C.R. 16(b)(6) discovery request. Next, the Court examined whether it was an abuse of discretion for the district court to allow the witnesses to testify. The Court concluded the admission of the investigating officer's testimony was an abuse of discretion because the officer "had knowledge of relevant facts and his name should have been disclosed in response" to the discovery request. *Id*. However, the Court concluded that admission of the booking agent's testimony was not an abuse of discretion. The Court explained:

> There is no evidence that the State knew or had reason to know that the booking deputy's questioning of Montgomery was relevant until after Montgomery took the stand and described the injuries he allegedly sustained during the incident. The State called the booking deputy to impeach Montgomery with prior inconsistent statements. Even if the district court had applied Rule 16(b)(6) in accordance with our decision today, a decision to allow the booking deputy to testify under these circumstances would have been within the boundaries of the district court's discretion.

*Montgomery*, 163 Idaho at 46, 408 P.3d at 44.

Here, the State argues that the evidence in this case is akin to the booking agent's testimony in *Montgomery* because it was solely used to impeach Estrada with prior inconsistent statements. As such, the State claims that the district court's decision to allow the prosecution to admit the calendar, audio recording, and Thompson's testimony was not an abuse of discretion. In addition, the State claims that (1) Chaves was not prejudiced by the prosecutor's failure to disclose the evidence, and (2) the prosecutor's failure to disclose the evidence was an innocent act because the law did not require disclosure as *Montgomery* had not yet been decided. We disagree.

We conclude that the district court abused its discretion by allowing the State to admit the calendar, audio recording, and Thompson's testimony. Contrary to the State's argument, the *Montgomery* Court did not hold that there was no abuse of discretion in failing to exclude the testimony of the booking agent solely because that witness's testimony was merely impeaching. Rather, the *Montgomery* Court reasoned that, where the State had no reason to anticipate certain testimony from the defendant himself, and the booking deputy's testimony was offered only to impeach that unanticipated testimony from the defendant, there was no abuse of discretion.

5

Factually, this case is distinguishable from the testimony presented in *Montgomery*. Unlike the defendant's testimony which the prosecutor had no reason to anticipate in *Montgomery*, the prosecutor in this case was aware that Estrada was Chaves' alibi witness and would testify that he was with Chaves on October 4. Because of that, the prosecutor arranged the interview with Estrada and procured Estrada's inconsistent statement that he was not with Chaves on October 4. It appears from the record that the defense may have been aware that the prosecutor interviewed Estrada, but it is clear that the defense was unaware of the content of the interview. It is also clear that the prosecutor did not disclose her plans to use the calendar, audio recording, or Thompson's testimony to impeach Estrada at trial despite the defense's discovery request for disclosure of this type of information. Nonetheless, the prosecutor presented Estrada's inconsistent statement to the jury through (1) the calendar which was signed by Estrada and indicated that Estrada was with Chaves on numerous days during October, but not on October 4; (2) the audio recording of the interview; and (3) Thompson's testimony that Chaves stated numerous times during the interview that he was not with Chaves on October 4. In essence, the prior inconsistent statement was created by the prosecution and withheld in an effort to surprise the defense at trial. This is exactly the kind of discovery violation that the rules were designed to prevent. Although *Montgomery* was decided after Chaves' trial, we are compelled to conclude that admission of the calendar, audio recording, and Thompson's testimony was an abuse of discretion. Therefore, we must determine whether its admission was harmless.

**B.     Harmless Error**

Error is not reversible unless it is prejudicial. *State v. Stell*, 162 Idaho 827, 830, 405 P.3d 612, 615 (Ct. App. 2017). With limited exceptions, even constitutional error is not necessarily prejudicial error. *Id.* Thus, we examine whether the alleged error complained of in the present case was harmless. *See State v. Lopez*, 141 Idaho 575, 578, 114 P.3d 133, 136 (Ct. App. 2005). Recently, in *State v. Garcia*, ___ Idaho ___, 462 P.3d 1125 (2020), the Idaho Supreme Court clarified the harmless error standard for objected-to, nonconstitutionally-based error:

> Today we take the opportunity to clarify several apparent points of confusion. First, we reiterate that the proper showing for "harmless error" is *not* "overwhelming evidence" of the defendant's guilt. *Chapman v. California* makes clear this is not the correct standard. *See Chapman*, 386 U.S. at 23. Harmless error is "error unimportant in relation to everything else the jury considered on the issue in question, as revealed in the record." *Yates*, 500 U.S. at 403. Proper application of the *Yates* two-part test requires weighing the probative force of the

6

record as a whole while excluding the erroneous evidence and at the same time comparing it against the probative force of the error. *Id*. at 404. When the effect of the error is minimal compared to the probative force of the record establishing guilt "beyond a reasonable doubt" without the error, it can be said that the error did not contribute to the verdict rendered and is therefore harmless. *Id*. at 404-05. While a reviewing court might quantify the probative force of the record as a whole as "overwhelming evidence" of guilt, as we did in *State v. Montgomery*, 163 Idaho at 46, 408 P.3d at 44, the probative force of the *error* must be weighed as well. To rely on the "overwhelming evidence" standard is to commit the same mistake the United States Supreme Court overturned in *Chapman v. California*, 386 U.S. at 24.

*Garcia*, ___ Idaho at ___, 462 P.3d at 1138-39.

The State argues that admission of the calendar, audio recording, and Thompson's testimony was harmless and did not contribute to the verdict. Specifically, the State claims that the error was harmless because: (1) the evidence was duplicative of the statements Estrada made during the interview; (2) regardless of the evidence, Estrada conceded during cross-examination that he was unsure if he was with Chaves on October 4; and (3) the snapchat conversation, which was shown to the jury, strongly indicated that Chaves and B.B. were together on October 4 and B.B. performed a sexual act on Chaves. In response, Chaves contends that the State cannot meet its burden to show that admission of the evidence was harmless. We agree with Chaves.

Admission of the calendar, audio recording, and Thompson's testimony was not harmless. This case largely rested on the testimony of B.B., Estrada, and Chaves. Before the inadmissible evidence was presented, the jury heard two separate stories. First, the jury heard B.B.'s testimony that he was with Chaves on the evening of October 4, 2016, and he engaged in sexual acts with Chaves. In addition, the jury was presented with snapchat conversations between Chaves and B.B., which indicated that Chaves and B.B. may have been together and may have engaged in sexual acts on October 4. Second, the defense presented the testimony of both Chaves and Estrada. The jury heard that Chaves was not with B.B. on the evening of October 4, 2016. Rather, the jury heard that Chaves and Estrada were together at Lake Lowell smoking marijuana.

During direct examination, Estrada was unwavering in his claim that he was with Chaves on the date in question. Contrary to the State's assertion, Estrada only conceded that he was unsure of which days he was with Chaves *after* the State backed him into a corner by presenting him with the inadmissible calendar and questioning him about his statements during the interview. Estrada's concession was a product of the State's use of the inadmissible evidence.

7

Although the State could have questioned Estrada about the statements that he made during the interview, it did not. In fact, Estrada's inconsistent statements came in solely through the State's use of the inadmissible evidence. After admitting the calendar, audio recording, and the testimony of Thompson to impeach Estrada, the State made the following remarks during closing arguments:

> And then there's the day in question, October 4. You heard the audio. [Estrada was] given every opportunity to say the calendar was wrong. They were together. He clearly says we were not together on the 4th and he writes it and he signs it and he agrees that it's accurate. Lies and damn lies. Got to figure out which one's true.

Chaves largely rested his defense strategy around Estrada's anticipated alibi testimony. The State acquired evidence to discredit Chaves' alibi and failed to disclose it. Had Estrada's testimony been unrebutted, the result of the trial may have been different. Although the jury may have convicted Chaves had the evidence not been improperly admitted, we cannot say that under the *Garcia* balancing test the error did not contribute to the verdict. Accordingly, the State has failed to carry its burden to show that the error was harmless.

## III.

## CONCLUSION

The district court abused its discretion by failing to exclude the calendar, audio recording, and testimony of Thompson. In addition, the error was not harmless. Therefore, we vacate Chaves' judgment of conviction for sexual battery of a minor child sixteen or seventeen years of age and remand the case to the district court for a new trial consistent with this opinion.

Judge LORELLO and Judge BRAILSFORD **CONCUR**.