# IN THE COURT OF APPEALS OF THE STATE OF IDAHO

## Docket No. 47760

| | |
|---|---|
| STATE OF IDAHO, | ) |
| | ) **Filed: November 23, 2021** |
| Plaintiff-Respondent, | ) |
| | ) **Melanie Gagnepain, Clerk** |
| v. | ) |
| | ) **THIS IS AN UNPUBLISHED** |
| RACHEL ELIZABETH LUNA, | ) **OPINION AND SHALL NOT** |
| | ) **BE CITED AS AUTHORITY** |
| Defendant-Appellant. | ) |
| | ) |

Appeal from the District Court of the Fourth Judicial District, State of Idaho, Ada County. Hon. Jonathan Medema, District Judge.

Judgment of conviction for exploitation of a vulnerable adult, <u>affirmed</u>.

Eric D. Fredericksen, State Appellate Public Defender; Andrea W. Reynolds, Deputy Appellate Public Defender, Boise, for appellant.

Hon. Lawrence G. Wasden, Attorney General; Andrew V. Wake, Deputy Attorney General, Boise, for respondent.

---

HUSKEY, Chief Judge

Rachel Elizabeth Luna appeals from her judgment of conviction for exploitation of a vulnerable adult. Luna argues the district court erred by prohibiting evidence of specific instances in which the victim gave gifts to Luna and other women, as well as evidence of specific instances when Luna previously accessed the victim's bank account with the victim's permission. Luna also argues the district court abused its discretion by concluding the victim's history of gift giving was inadmissible character evidence. Finally, Luna argues the district court erred in instructing the jury that an agent acting under a power of attorney may not authorize gifts to themselves unless the power of attorney expressly provides the agent with such authority. She argues that the district court's instruction created a variance with the charging document. For the reasons set forth below, we affirm the judgment of conviction.

1

# I.

## FACTUAL AND PROCEDURAL BACKGROUND

"Skip" Benton Hofferber and Luna became close friends based on his patronage at a bar where Luna worked as a bartender. Over time, Luna and her daughter lived with Hofferber, and Hofferber gave Luna various gifts and money. After Hofferber suffered a stroke in September 2016, he gave Luna power of attorney[1] over his bank account (Bank POA). Thereafter, Hofferber also executed a springing power of attorney (Springing POA) in March 2017 that designated Luna as his agent. The Springing POA stated that Luna did not have authority to make a gift or use Hofferber's property to benefit herself.

During the course of the friendship, Hofferber gave Luna a $24,000 Rolex watch, which Luna sold and kept the proceeds. Hofferber and Luna also decided to sell Hofferber's house, and Hofferber received an offer, which he accepted. Prior to closing, Hofferber suffered a significant medical event. As a result, the doctor authored a letter stating that Hofferber was unable to make decisions and that it was necessary to defer to a power of attorney. The letter triggered the Springing POA. Luna used the Springing POA to execute the necessary documents to close the sale of Hofferber's home, which netted approximately $90,000. Luna appropriated $60,000 for her own personal use by completing a cash withdrawal from Hofferber's bank account. She then resigned her power of attorney position.

Thereafter, law enforcement received a call alleging that Luna had taken advantage of Hofferber. In response to the call, law enforcement spoke with Shauna Urzua, who at that time was designated as Hofferber's power of attorney. Urzua explained the circumstances giving rise to Hofferber's and Luna's friendship, as well as Urzua's version of Luna's appropriation of the proceeds from the sale of the house. Urzua said there were multiple checks made out to cash from Hofferber's account and that Luna wrote multiple checks from Hofferber's account to pay her personal expenses. Urzua also told law enforcement about the watch.

In a separate interview with law enforcement, Hofferber stated that he and Luna were friends and that after his stroke in 2016, he designated Luna as his power of attorney to assist him with daily and personal issues. Hofferber said he did not receive the $60,000 in proceeds from the

---

[1]     It is not entirely clear from the record whether there was one Bank POA (and the date it was executed) or whether there were two. On appeal and in the district court, Luna asserts the Bank POA was executed in October 2016. Defendant's Exhibit C, the Bank POA, reflects it was executed in January 2017. The discrepancy does not affect the analysis or outcome of the case.

2

sale of his home or the $24,000 from the sale of the watch. Hofferber explained that he had never intended for the proceeds from either sale to go to Luna and that he did not authorize Luna to receive the proceeds.

The State charged Luna with two counts of felony exploitation of a vulnerable adult in violation of Idaho Code § 18-1505(3), alleging that on two occasions, Luna exploited Hofferber, a vulnerable adult, by "taking and/or obtaining proceeds and/or money from Mr. Hofferber, where the monetary damage from such exploitation exceed[ed] one thousand dollars." Count I was alleged to have occurred on April 28, 2017, and stemmed from Luna's receipt of $24,000 in proceeds from the sale of the watch. Count II was alleged to have occurred on May 8, 2017, and stemmed from the $60,000 in proceeds Luna obtained from the sale of Hofferber's home.

Prior to trial, Luna filed a motion in limine seeking to introduce evidence of prior gifts Hofferber had given to Luna and other women before and after his stroke in 2016. The district court denied the motion as being untimely filed and indicated that it would rule on the evidentiary issues at trial. The district court took up the issue on the first day of trial, and Luna's counsel argued that evidence of specific instances of Hofferber giving gifts to Luna and other women was relevant to show Hofferber's intent. The district court held that evidence of specific gifts Hofferber gave to Luna and others was irrelevant and otherwise inadmissible character evidence.

Luna also moved to admit evidence of checks she wrote from Hofferber's bank account prior to the withdrawal of the $60,000 from the account. The district court held that evidence of the specific instances that Luna wrote checks to herself, aside from the $60,000 check from the proceeds of the sale of Hofferber's home, was irrelevant and, as such, inadmissible. The court explained:

> [T]he defense can present evidence that Mr. Hofferber was of sound mind and simply gave these sums to Ms. Luna either on the date that the checks were transmitted or on some earlier occasion.
>
> If, however, the defense is not that these were gifts, that these were simply legitimate exercises of Ms. Luna's power granted to her under a power of attorney, then, her powers are stated in the written documents themselves, and the jury can simply read them and decide whether she exercised the power accordingly.
>
> In both circumstances, how she exercised those powers on other occasions, or how Mr. Hofferber gave her gifts on other occasions, is in my view, simply not relevant. It doesn't say anything about whether these were gifts or whether these were appropriate exercises of her powers granted to her in the written power of attorney guidelines.

3

The district court also indicated that Luna could introduce evidence of Hofferber's character for generosity in the form of opinion or reputation evidence.

Luna was the only witness for the defense. She introduced a copy of the Bank POA signed by Luna and Hofferber in January 2017, which authorized Luna to deposit and withdraw funds from Hofferber's bank account and did not include guidelines regarding gift giving. Luna testified that she received the check for $24,000 from the sale of the watch and deposited it into her bank account. Luna further testified that on the same day the proceeds from the sale of Hofferber's house were deposited to his bank account, $60,000 of the proceeds were transferred to Luna's bank account. Luna stated that Hofferber's bank understood Luna to be acting under the Bank POA and that she did not present the bank with a copy of the Springing POA. Luna did not testify that it was her belief that either the Bank POA or the Springing POA authorized her to make gifts to herself and provided no other evidence that she was authorized to do so.

During the jury instructions conference, Luna's counsel objected to jury instruction 12, which stated:

> A person (the agent) who has been given a power of attorney by another person (the principal) may give the principal's money to others if the written power of attorney expressly grants the agent the power to make gifts of the principal's property.
> However, the agent may not give the principal's money or other property to the agent himself unless the written power of attorney expressly authorizes the agent to do so.

Luna's counsel asked the district court where the instruction came from, and the district court explained:

> It's the paraphrasing of the Uniform Power of Attorney Act. . . .
> So it's partially taken from Idaho Code 15[-]12-217. The legislature has said that the language in a power of attorney granting a general authority with respect to gifts [a]uthorizes the agent to make gifts to other persons up to particular amounts set in the Internal Revenue Code. Idaho Code 15[-]12-201, talks about the authorities that require a specific grant as opposed to a general grant of authority.
> It includes making gifts, and in (4) of that statute, the law provides that "unless the power of attorney otherwise provides a grant of authority to make a gift, subject to 1512-217."
> (2) of 15[-]12-201 provides that "notwithstanding a grant of authority to exercise authority in (1), including the authority under 1(b) to make gifts [u]nless the power of attorney otherwise provides, an agent that is not an ancestor, spouse, or descendant of the principal, may not exercise authority under the power of

4

attorney to create an agent or an individual to whom the agent owes a legal obligation an interest in the principal's property including by gift."

Luna's counsel objected "just on the fact that that's a civil code section, not a criminal" code section. The district court overruled the objection and asked Luna's counsel whether he had any authority that the law did not apply to criminal cases and if he was arguing that the instruction was an incorrect statement of the law. Luna's counsel stated, "This instruction effectively creates its own crime. You're taking civil prohibition and turning that into a crime." The district court responded:

> Idaho Code 18-1505 defines abuse of vulnerable adult to include the misuse of the vulnerable adult's power of attorney, so when the jury has to interpret what misuse is, doesn't it make sense that they understand the lawful use of power of attorney under the Uniform Power of Attorney Act?

The district court again asked Luna's counsel if he thought the instruction was an accurate statement of the law, and Luna's counsel said:

> The only thing I guess, Judge, the however is kind of like the first paragraph and second paragraph are against each other. I know the other one is talking about what the person can expressly can't do as well. It's just talking about money to others versus money to self."

The district court said "okay," and Luna's counsel stated, "I don't care if it's in there, or not."

The jury returned a not-guilty verdict on Count I, related to the sale of the watch, and a guilty verdict on Count II, related to the proceeds from the sale of Hofferber's home. Luna timely appealed.

## II.

## STANDARD OF REVIEW

Whether evidence is relevant is reviewed de novo, while the decision to admit relevant evidence is reviewed for an abuse of discretion. *State v. Garcia*, 166 Idaho 661, 669, 462 P.3d 1125, 1133 (2020). When a trial court's discretionary decision is reviewed on appeal, the appellate court conducts a multi-tiered inquiry to determine whether the lower court: (1) correctly perceived the issue as one of discretion; (2) acted within the boundaries of such discretion; (3) acted consistently with any legal standards applicable to the specific choices before it; and (4) reached its decision by an exercise of reason. *State v. Herrera*, 164 Idaho 261, 270, 429 P.3d 149, 158 (2018).

Whether the jury has been properly instructed is a question of law over which we exercise free review. *State v. Severson*, 147 Idaho 694, 710, 215 P.3d 414, 430 (2009). When reviewing

5

jury instructions, we ask whether the instructions as a whole, and not individually, fairly, and accurately reflect applicable law. *State v. Bowman*, 124 Idaho 936, 942, 866 P.2d 193, 199 (Ct. App. 1993).

The existence of an impermissible variance between a charging instrument and the jury instructions is a question of law over which we exercise free review. *State v. Sherrod*, 131 Idaho 56, 57, 951 P.2d 1283, 1284 (Ct. App. 1998). Our task in resolving the issue presented is two-fold. First, we must determine whether there is a variance between the information used to charge Luna with exploitation of a vulnerable adult and the instructions presented to the jury. *See State v. Brazil*, 136 Idaho 327, 329, 33 P.3d 218, 220 (Ct. App. 2001). Second, if a variance exists, we must examine whether it rises to the level of prejudicial error requiring reversal of the conviction. *Id.* A variance between a charging instrument and a jury instruction necessitates reversal only when it deprives the defendant of the right to fair notice or leaves him or her open to the risk of double jeopardy. *State v. Windsor*, 110 Idaho 410, 417-18, 716 P.2d 1182, 1189-90 (1985); *Brazil*, 136 Idaho at 330, 33 P.3d at 221.

### III.

### ANALYSIS

#### A.     The District Court Did Not Err by Excluding Evidence of Other Gifts

Luna argues the district court erred by preventing her from introducing evidence of other gifts Hofferber gave Luna prior to his hospitalization in April 2017, as well as evidence of gifts he gave to other women. Luna contends this evidence was relevant because it has a tendency to make it more probable that Luna's use of Hofferber's money was not unjust or improper. The State asserts the evidence was inadmissible under various Idaho Rules of Evidence.

Evidence that is relevant to a material and disputed issue concerning the crime charged is generally admissible. *State v. Garcia*, 166 Idaho 661, 670, 462 P.3d 1125, 1134 (2020). Evidence is relevant if it has any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. I.R.E. 401; *Garcia*, 166 Idaho at 670, 462 P.3d at 1134. Whether a fact is of consequence or material is determined by its relationship to the legal theories presented by the parties. *State v. Johnson*, 148 Idaho 664, 671, 227 P.3d 918, 925 (2010).

The district court found that evidence of specific gifts Hofferber gave to Luna and other women was not relevant because it did not make it more or less likely that Hofferber gave Luna a

gift on any particular occasion. The district court further explained that evidence of Hofferber's past gift giving was not relevant to whether he intentionally conveyed certain property to Luna.

At trial, Luna did not dispute that Hofferber was a vulnerable adult and that she took over $1,000 from Hofferber. Luna was acquitted on Count I, which was premised upon the proceeds from the sale of the watch, thus, any error in excluding the evidence as it related to Count I is harmless. *State v. Stell*, 162 Idaho 827, 830, 405 P.3d 612, 615 (Ct. App. 2017) (error is not reversible unless it is prejudicial). The only disputed element of Count II was whether it was unjust or improper for Luna to take the $60,000 from the proceeds of the sale of Hofferber's home.

Evidence of Hofferber's history of generosity towards Luna and other women does not make it more or less likely that it was unjust or improper for Luna to take the $60,000 when she was acting as his agent under the Springing POA. Luna sought to introduce evidence of specific gifts Hofferber had given her and others prior to Hofferber's incapacitation in April 2017. Actions Hofferber took prior to being incapacitated do not inform whether Luna properly executed her duties as an agent when she transferred $60,000 to herself while Hofferber was incapacitated. The Bank POA did not expressly authorize Luna to make gifts to herself and the Springing POA expressly prohibited Luna from making gifts. As neither document gave Luna the authority to make gifts to herself, evidence of Hofferber's generosity towards Luna and others prior to Hofferber's incapacitation did not make it more or less likely that it was unjust or improper for Luna to use either power of attorney to gift herself $60,000. Thus, the district court correctly concluded that evidence of specific gifts Hofferber gave to Luna and other women on prior occasions was not relevant.

Even if Hofferber's history of generous behavior was relevant, the district court did not abuse its discretion by precluding Luna from introducing evidence of specific instances of gift giving and by allowing only reputation evidence of Hofferber's character for generosity. Idaho Rule of Evidence 404(a) governs the use of character evidence and provides, in relevant part:

> (1) Prohibited Uses. Evidence of a person's character or trait of character is not admissible to prove that on a particular occasion the person acted in accordance with the character or trait.
> (2) Exceptions for a Defendant or Victim in a Criminal Case. The following exceptions apply in a criminal case:
> > . . . .
> > (B) a defendant may offer evidence of an alleged victim's pertinent trait of character, and if the evidence is admitted, the prosecutor may offer evidence to rebut it[.]

7

Idaho Rule of Evidence 405(a) limits the introduction of character evidence: "When evidence of a person's character or character trait is admissible, it may be proved by testimony about the person's reputation or by testimony in the form of an opinion." Only when a person's character or character trait is an essential element of a charge, claim, or defense may character be proved by specific instances of the person's conduct. I.R.E. 405(b).

Luna does not argue on appeal that evidence of Hofferber's generosity was an essential element of a charge, claim, or defense; therefore, any admissible evidence of his character was limited under Rule 405 to reputation and opinion testimony. The district court allowed Luna to present evidence of Hofferber's character for generosity in the form of opinion or reputation evidence. As evidence of specific acts of generosity was precluded under Rule 405, the district court did not abuse its discretion by limiting evidence of Hofferber's generosity to reputation and opinion testimony.

**B.    The District Court Did Not Err by Excluding Evidence of Luna's Additional Use of Hofferber's Bank Account**

Luna contends the district court erred by excluding evidence of Luna's prior use of Hofferber's bank account. The State asserts this evidence was irrelevant to whether Luna's conduct was unjust or improper and was therefore inadmissible.

Luna sought to introduce records of specific checks she had written from Hofferber's bank account prior to his incapacitation based on the Bank POA. The district court explained that specific instances of Luna accessing Hofferber's bank account were irrelevant because access to the account did not indicate that any of the transactions, including the $60,000 Luna transferred to herself, were appropriate exercises of Luna's authority under the Bank POA. The district court did, however, allow Luna to present evidence that Hofferber generally permitted her to access his bank account, and Luna testified that she regularly did so.

The district court did not err by preventing Luna from introducing evidence of specific instances when Luna wrote checks from Hofferber's bank account. As explained above, evidence is relevant if it has any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. I.R.E. 401; *Garcia*, 166 Idaho at 670, 462 P.3d at 1134. Evidence of Luna's prior use of Hofferber's bank account to write checks for various expenses does not help resolve whether Luna was authorized to transfer $60,000 from the sale of Hofferber's home to herself while acting as his

8

agent and, therefore, does not make it more or less probable that Luna acted unjustly or improperly in doing so. Thus, the district court did not err by excluding this evidence.

**C.    The Jury Instruction Did Not Create a Variance**

Luna argues jury instruction 12 created a variance from the information because the information did not allege that Luna exploited Hofferber by failing to act in accordance with the Uniform Power of Attorney Act. Luna contends, as she did at trial, that the instruction effectively creates its own crime by taking a civil prohibition and turning it into a crime. Luna asserts that the alleged variance was fatal because it deprived her of her constitutional right to due process by depriving her of fair notice of the charges against her. In response, the State argues the instruction did not create a variance, as the instruction matched the information with respect to the means by which Luna was alleged to have violated I.C. § 18-1505.

Luna's counsel objected to instruction 12: "Judge, I would object just on the fact that that's a civil code section, not a criminal" code section. The district court asked Luna's counsel:

> Idaho Code 18-1505 defines abuse of vulnerable adult to include the misuse of the vulnerable adult's power of attorney, so when the jury has to interpret what misuse is, doesn't it make sense that they understand the lawful use of power of attorney under the Uniform Power of Attorney Act?

Jury Instruction 12 did not create a variance. A variance exists when the jury instructions do not match the allegations in the charging document as to the means by which a defendant is alleged to have committed the charged crime. *State v. Bernal*, 164 Idaho 190, 194, 427 P.3d 1, 5 (2018). In Count II of the information, the State alleged that in violation of I.C. § 18-1505(3), Luna:

> on or about the 8th day of May 2017, in the County of Ada, State of Idaho, did exploit Mr. Benton "Skip" Merrill Hofferber, Jr., a vulnerable adult, by taking and/or obtaining proceeds and/or money from Mr. Hofferber, where the monetary damage from such exploitation exceeds one thousand dollars ($1,000.00).

Idaho Code § 18-1505(4)(c) defines exploitation as: "an action which may include, but is not limited to, the unjust or improper use of a vulnerable adult's financial power of attorney, funds, property or resources by another person for profit or advantage."

The district court instructed the jury on the elements of exploitation of a vulnerable adult. This included instructing the jury that, in order to find Luna guilty, it was required to find beyond a reasonable doubt that Luna "exploited' Hofferber "by taking and/or obtaining proceeds and/or money from" him. The district court also provided the jury with instruction 15, which defined

9

"[e]xploitation" or "exploit" using the exact language of I.C. § 18-1505(4)(c). Jury instruction 12 stated:

> A person (the agent) who has been given a power of attorney by another person (the principal) may give the principal's money to others if the written power of attorney expressly grants the agent the power to make gifts of the principal's property.
> However, the agent may not give the principal's money or other property to the agent himself unless the written power of attorney expressly authorizes the agent to do so.

As the district court explained, instruction 12 paraphrased I.C. § 15-12-201(2), which provides:

> Notwithstanding a grant of authority to exercise authority in subsection (1) of this section, unless the power of attorney otherwise provides, an agent that is not an ancestor, spouse or descendant of the principal, may not exercise authority under a power of attorney to create in the agent, or in an individual to whom the agent owes a legal obligation of support, an interest in the principal's property, whether by gift, right of survivorship, beneficiary designation, disclaimer or otherwise.

Idaho Code § 15-12-201 is part of the Uniform Power of Attorney Act. Luna contends that by paraphrasing I.C. § 15-12-201, the district court lowered the State's burden of proof by allowing the jury to find Luna exploited Hofferber simply by failing to comply with the Uniform Power of Attorney Act. We disagree. Luna was charged with exploiting a vulnerable adult; exploitation includes the unjust or improper use of a vulnerable adult's financial power of attorney. Instruction 12 defined the lawful use of a power of attorney under the Uniform Power of Attorney Act. The instruction provided the jury with an explanation of an agent's authority under a power of attorney when the power of attorney does not explicitly authorize the agent to give gifts to themselves. Even if the jury found that Luna failed to comply with either of the powers of attorney, it still had to find the additional element that such misuse was either improper or unjust. Thus, the jury could not find Luna guilty based only on her lack of compliance with the paraphrased section of the Uniform Power of Attorney Act. Instead, the jury was required to find that Luna exploited Hofferber. This distinction is recognized by Luna, as she argues in her reply brief that "Whether Ms. Luna exceeded her authority under the springing power of attorney is relevant to the charged crime, but it is not determinative. The critical question was whether Ms. Luna's admitted use of Mr. Hofferber's funds was unjust or improper."

Luna contends that whether her actions were unjust or improper is dependent on her intent, and that instruction 12 permitted the jury to read intent out of this case. This assertion is misplaced.

10

Idaho Code § 18-1505(4)(c) does not require a finding of intent, and the information did not allege intent. As such, there was no variance between what Luna was charged with and the jury instructions on that charge.

However, even if there was a variance, the variance was not fatal because it did not deprive Luna of fair notice of the charges against her. A variance between a charging instrument and a jury instruction necessitates reversal only when it deprives the defendant of the right to fair notice or leaves him or her open to the risk of double jeopardy. *Windsor*, 110 Idaho at 417-18, 716 P.2d at 1189-90 (1985); *Brazil*, 136 Idaho at 330, 33 P.3d at 221. The notice element requires courts to determine whether the record suggests the possibility that the defendant was misled or embarrassed in the preparation or presentation of his or her defense. *Windsor*, 110 Idaho at 418, 716 P.2d at 1190.

Luna argues the variance was fatal because jury instruction 12 required her to defend her actions as proper under the Uniform Power of Attorney Act and because prior to the jury instructions conference, Luna's counsel was unaware of the Act's limitations on gifts. Neither the Bank POA nor the Springing POA provided Luna with the authority to make gifts to herself, and Luna presented no evidence that she was authorized to do so. The premise of the State's case was that Luna exploited Hofferber by unlawfully using the powers of attorney to take Hofferber's money. That Luna's counsel was apparently unaware of applicable law in Idaho regarding the limitations of one acting as an agent under a power of attorney does not mean that Luna was misled or embarrassed in the preparation or presentation of her defense. Because Luna had fair notice of the crime she was alleged to have committed and the means by which she committed it, she was not prejudiced in the presentation of her defense; any variance between the charging document and jury instruction 12 was not fatal.

## IV.

## CONCLUSION

The district court did not err by prohibiting evidence of specific instances in which Hofferber gave gifts to Luna and other women and evidence of specific instances when Luna wrote checks from Hofferber's bank account. Jury instruction 12 regarding an agent's gift giving authority under a power of attorney did not create a fatal variance. Therefore, Luna's judgment of conviction is affirmed.

Judge LORELLO and Judge BRAILSFORD **CONCUR**.

11