# IN THE COURT OF APPEALS OF THE STATE OF IDAHO

## Docket No. 48019

STATE OF IDAHO,

      Plaintiff-Respondent,

v.

SHERRI LEANN WATRING,

      Defendant-Appellant.

)
)
)
)
)
)
)
)
)
)
)
)

Filed: November 23, 2021

Melanie Gagnepain, Clerk

THIS IS AN UNPUBLISHED
OPINION AND SHALL NOT
BE CITED AS AUTHORITY

---

Appeal from the District Court of the Fourth Judicial District, State of Idaho, Ada County. Hon. Jason D. Scott, District Judge.

Order awarding restitution, affirmed.

Eric D. Fredericksen, State Appellate Public Defender; Ben P. McGreevy, Deputy Appellate Public Defender, Boise, for appellant.

Hon. Lawrence G. Wasden, Attorney General; Kacey L. Jones, Deputy Attorney General, Boise, for respondent.

---

BRAILSFORD, Judge

Sherri Leann Watring appeals from the district court's order of restitution. We affirm.

## I.

## FACTUAL AND PROCEDURAL BACKGROUND

In 2011, Watring began working as a part-time caregiver for William and Joella Howell, assisting them with household-related duties. Over time, Watring eventually became their full-time caregiver. In 2016, Watring also began performing healthcare-related duties for them and obtained a power of attorney on their behalves. In 2017, Joella's health had declined to the point that she was bedridden.

While in Watring's care, the Howells became increasingly isolated from their family members and their family members complained they were unable to communicate with the Howells privately and without Watring's involvement. On February 1, 2018, William passed

1

away and was cremated, but Watring did not notify his family of his death. Instead, the Howells' daughter was the first family member to learn about William's passing on February 7 when she arrived at the Howell residence in Boise after traveling from Alabama to visit her parents.

At that time, Joella looked "very unhealthy," "frail," and "gaunt"; "had heavy chest congestion"; had "a lot of large bedsores" and "several different types of wounds"; and "showed signs of dehydration." On February 22, the Howells' son obtained the guardianship of Joella, fired Watring, and had law enforcement remove Watring from the Howell residence. After Watring's removal from the residence, it was discovered the Howells' financial and other records were missing, including current billings, medical records, military records, identifications, wallets, checkbooks, credit cards, and the computer. Also missing were the keys to the Howells' properties, the garage door openers, and William's ashes.

The day after Watring's removal from the Howell residence, a Boise police officer responded to "an agency assist call for adult protective services" and began an investigation. During this investigation, law enforcement discovered money transfers from the Howells' financial accounts to Watring and charges on the Howells' credit cards between December 2016 and February 2018 of about $25,000.

While Joella improved under the care of others, she passed away on June 25, 2018, and thereafter, in January 2019, the State charged Watring with two counts of abusing, exploiting, or neglecting a vulnerable adult, Idaho Code §§ 18-1505(1), 18-1505(3), including for abusing or neglecting Joella and for exploiting the Howells by taking or appropriating their property in excess of one thousand dollars. Additionally, the State also charged Watring with petit theft, I.C. §§ 18-2403(1), 18-2407(2), 18-2409, for taking the urn containing William's ashes. Watring pled not guilty to these charges, and the case proceeded to a jury trial.

The jury found Watring guilty on all counts. At sentencing, the district court imposed concurrent sentences of 18 months on the two abuse, neglect, and exploitation charges and 180 days on the theft charge. The court reserved the issue of restitution and subsequently held an evidentiary hearing to determine restitution. At that hearing, Watring testified. The State, however, did not present any evidence, but it moved the court to take judicial notice of the trial transcript and certain trial exhibits, which the court did. Based on this judicially noticed evidence, the State requested $103,491.44 in restitution, which amount included money transfers from the Howells' accounts to Watring of $78,051.46 and the debt on the Howells' credit cards

2

of $25,439.98. Watring opposed the State's request, arguing that she did not have the immediate ability to pay restitution; she did not have any foreseeable ability to pay restitution; and there was no living victim to receive restitution payments.

The district court entered a written decision rejecting Watring's arguments that "the Howells' estate isn't a 'directly injured victim'" and that "she has no money to pay restitution and that is unlikely to change." Regarding this latter argument, the court found:

> [Watring] may well lack the "foreseeable ability" to fully repay a large restitution award. But she appears to have mostly supported herself so far in her life, and it isn't unlikely that she'll find a way to support herself and be capable of making modest restitution payments.

The district court, however, did not order restitution in the amount of the State's request of $103,491.44. Instead, the court found Watring was entitled to $34,274 in payment for her services to the Howells and to $4,866.46 for an unchallenged, reimbursed expense. Based on these findings, the court subtracted these amounts from the total money transfers of $78,051.46 and ordered $38,911.00 in restitution for the money transfers. The court also concluded the State failed to prove by a preponderance of evidence that the $25,439.98 credit debt was incurred for Watring's benefit instead of the Howells' benefit. Finally, the court ordered that, because of "the sizeable restitution amount" and "Watring's difficult financial circumstances and limited earning ability," interest would not accrue on the restitution amount.

Watring timely appeals the order of restitution.

## II.

## ANALYSIS

Idaho Code Section 19-5304(2) authorizes a sentencing court to order a defendant to pay restitution for economic loss to the victim of a crime. It provides that the court "shall order a defendant found guilty of any crime which results in economic loss to the victim to make restitution to the victim" unless the court determines a restitution order would be "inappropriate or undesirable." *Id.* The policy favoring full compensation to crime victims who suffer economic loss and the factors in I.C. § 19-5304(7) guide a trial court's decision to order restitution. *State v. Richmond*, 137 Idaho 35, 37, 43 P.3d 794, 796 (Ct. App. 2002); *State v. Bybee*, 115 Idaho 541, 543, 768 P.2d 804, 806 (Ct. App. 1989). These factors include the amount of the victim's economic loss; the defendant's financial resources, needs, and earning ability; and such other factors as the court deems appropriate. I.C. § 19-5304(7).

A defendant's "immediate inability" to pay restitution shall not be, in and of itself, a reason not to order restitution. *Bybee*, 115 Idaho at 543, 768 P.2d at 806. "The 'immediate inability' of a defendant to pay is a separate concept from the 'foreseeable ability' of the defendant to repay the award." *State v. Garcia*, 166 Idaho 661, 682, 462 P.3d 1125, 1146 (2020). "[A] court may order restitution based on a foreseeable ability to repay the award." *State v. Wisdom*, 161 Idaho 916, 924, 393 P.3d 576, 584 (2017). A trial court, however, is not "required to divine a defendant's future financial capabilities." *Garcia*, 166 Idaho at 682-83, 462 P.3d at 1146-47.

Whether to order restitution is in the trial court's discretion. Thus, we will not overturn an order of restitution unless an abuse of discretion is shown. *Richmond*, 137 Idaho at 37, 43 P.3d at 796. When a trial court's discretionary decision is reviewed on appeal, the appellate court conducts a multi-tiered inquiry to determine whether the trial court: (1) correctly perceived the issue as one of discretion; (2) acted within the boundaries of such discretion; (3) acted consistently with any legal standards applicable to the specific choices before it; and (4) reached its decision by an exercise of reason. *Lunneborg v. My Fun Life*, 163 Idaho 856, 863, 421 P.3d 187, 194 (2018). Further, if substantial and competent evidence supports a trial court's factual finding that a defendant has a foreseeable ability to pay the restitution award, we will not disturb that finding on appeal. *Garcia*, 166 Idaho at 681, 462 P.3d at 1145.

On appeal, Watring neither challenges the amount of restitution ordered nor the district court's ruling that a restitution award on behalf of the Howells' estate is appropriate. Rather, Watring argues the court "abused its discretion by entering an order of restitution without properly considering her ability to repay the amount in the future." In support, Watring relies on *Garcia*.

In *Garcia*, the district court ordered Garcia to pay $162,285.27 in restitution. *Id.* On appeal, Garcia asserted the court abused its discretion by failing to adequately consider his inability to pay restitution, arguing he did not have "the education or assurance of employment to pay the restitution amount." *Id.* The Idaho Supreme Court noted the district court's analysis of Garcia's ability to pay restitution was limited solely to the single sentence that "having considered [Garcia's] economic circumstances, the [c]ourt concludes that an order of restitution is appropriate in this case." *Id.* at 682, 462 P.3d at 1146. Rejecting this analysis as inadequate, the Court concluded the district court failed to recognize the defendant's immediate inability to

4

pay is a separate concept from his foreseeable ability to pay restitution. *Id.* at 682-83, 462 P.3d at 1146-47. As a result, the Court concluded the district court abused its discretion by "failing to recognize the outer boundaries of its discretion," by "failing to identify the proper standard," and "by not showing an exercise of reason." *Id.* at 682, 462 P.3d at 1146. The Court vacated the restitution order and remanded for a "proper, reasoned consideration" of all the factors identified in I.C. § 19-5304(7), including "Garcia's future ability" to pay restitution. *Garcia*, 166 Idaho at 683, 462 P.3d at 1147.

In contrast to the district court in *Garcia*, however, the district court in this case did properly consider Watring's foreseeable ability to pay restitution. The court expressly recognized it must "consider whether [Watring] has the 'foreseeable ability' to pay restitution in the future." Regarding this foreseeable ability, the court found that "Watring is now 54 years old, was on food stamps, and has limited financial resources, significant health problems, and not much in the way of an employment history or near-term employment prospects." Further, the court recognized Watring "might be unemployable" as "an in-home caretaker" in the future as a result of her conviction and will be imprisoned "for the next fourteen months or so and unable to earn any substantial amount of money" during that time. Nevertheless, the court found that, while Watring "may lack the 'foreseeable ability to fully repay a large restitution award,'" "she appears to have mostly supported herself so far in her life, and it isn't unlikely that she'll find a way to support herself and be capable of making modest restitution." Additionally, the court expressly decided that, because of "Watring's difficult financial circumstances and limited earning ability," it would not award interest on the restitution amount. Based on these findings and conclusions, we conclude the district court neither failed to recognize the distinction between immediate inability and foreseeable ability to pay restitution nor failed to properly consider Watring's foreseeable ability to pay restitution.

Watring also argues the district court "did not act consistently with applicable legal standards" because substantial evidence does not support that she "has any foreseeable ability to repay the amount of restitution awarded." Specifically, Watring argues the court's "analysis glossed over the fact [Watring] had 'mostly supported herself' with in-home caretaking," while at the same time acknowledging Watring could likely not work as an in-home caretaker in the future because of her conviction.

5

We conclude, however, that substantial and competent evidence in the record supports the district court's conclusion that Watring will likely be able to "find a way to support herself and be capable of making modest restitution payments" after her incarceration concludes. For example, Watring's presentence investigation report states she reported that she likes "to devote [her] time to [her] work"; "she does not have an issue maintaining work"; and she has job skills, other than caregiving, as a landscaper and a millworker. *See Wisdom*, 161 Idaho at 924, 393 P.3d at 584 (noting presentence materials may serve as substantial evidence to support restitution award). Additionally, Watring acknowledged during the restitution hearing that she is "very industrious" and has "always had a job since [she was] a teenager."

Finally, we reject Watring's attempts to distinguish this case from *Wisdom* and *Bybee*. While Watring did not "gain employment after the instant offense" and before her incarceration like the defendant in *Wisdom* and does not have "the business acumen" of the defendant in *Bybee*, the absence of these facts does not support the proposition, as Watring suggests, that she will be unable to obtain employment after her incarceration concludes in order to make restitution payments. *See Wisdom*, 161 Idaho at 924, 393 P.3d at 584 (noting defendant had become employed after offense); *Bybee*, 115 Idaho at 543, 768 P.2d at 806 (noting defendant had earning potential based on business acumen). Other facts, such as Watring's ability to maintain employment and her industriousness, support the district court's conclusion that Watring has a foreseeable ability to make modest restitution payments.

## III.
## CONCLUSION

Substantial and competent evidence supports the district court's conclusion that Watring has a foreseeable ability to pay restitution, and the court did not abuse its discretion in awarding restitution. Accordingly, we affirm the court's restitution order.

Judge LORELLO and Judge Pro Tem HORTON **CONCUR**.