**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 48862**

| | |
|---|---|
| STATE OF IDAHO,<br><br>        Plaintiff-Respondent,<br><br>v.<br><br>BYRON FRANCIS ELY,<br><br>        Defendant-Appellant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

Filed: November 23, 2022

Melanie Gagnepain, Clerk

THIS IS AN UNPUBLISHED
OPINION AND SHALL NOT
BE CITED AS AUTHORITY

Appeal from the District Court of the Fourth Judicial District, State of Idaho, Ada County. Hon. Patrick Miller, District Judge.

Judgment of conviction for lewd conduct with a minor under sixteen, <u>affirmed</u>.

Eric D. Fredericksen, State Appellate Public Defender; Jason C. Pintler, Deputy Appellate Public Defender, Boise, for appellant.

Hon. Lawrence G. Wasden, Attorney General; John C. McKinney, Deputy Attorney General, Boise, for respondent.

---

HUSKEY, Judge

Byron Francis Ely appeals from his judgment of conviction for one count of lewd conduct with a minor under sixteen. Ely asserts the district court abused its discretion by admitting hearsay evidence during his trial. Any error in admitting the challenged testimony was harmless; therefore, the judgment of conviction is affirmed.

**I.**

**FACTUAL AND PROCEDURAL BACKGROUND**

This case arose after J.M., who was seven years old, stayed the night at Ely's house under the care of Ely's roommate, Cassandra Coleman. The next morning, J.M. returned home and disclosed to her grandmother (Grandmother) that Ely had put his tongue on her private area and had "bit" her private area. Grandmother called law enforcement. Law enforcement responded and Grandmother provided the officers with the underwear and clothing J.M. wore while she stayed

1

with Coleman and Ely. Grandmother also gave the officers drawings and writings J.M. had made depicting Ely's conduct.

J.M. was taken to St. Luke's Children at Risk Evaluation Services (CARES) where she participated in an interview conducted by Michelle Borgquist, a licensed, master-level social worker and forensic interviewer. J.M. made disclosures during the CARES interview that were consistent with what J.M. told Grandmother.

The State charged Ely with one count of lewd conduct with a minor, Idaho Code § 18-1508. Ely pleaded not guilty and the case proceeded to trial. Numerous witnesses testified during trial including: J.M., Grandmother; various law enforcement officers; various experts; Borgquist; and Dr. Matthew Cox who examined J.M. following her CARES interview. The jury was read the transcript of Mark McCullough's preliminary hearing testimony from a separate case against Ely. In that separate case, Ely was charged with soliciting the murder of J.M. and her guardians. McCullough, however, died sometime between the preliminary hearing in that case and the trial in this case.

At issue in this case is a statement made by Borgquist during her testimony when she described meeting with the referring law enforcement officer, Detective Lau, before conducting the CARES interview. Ely objected that Borgquist's testimony relied on information that originated when J.M. made her initial disclosures to Grandmother, who repeated the statements to Detective Lau, who repeated the statements to Borgquist. Ely argued that Borgquist's testimony about her conversation with Detective Lau constituted hearsay and it was not admissible pursuant to Idaho Rule of Evidence 803(4). The district court overruled Ely's objection and Borgquist testified:

> So, again, I talked to Detective Lau, and he advised me that [J.M.] had disclosed that she had been touched inappropriately; that she was licked on the vagina. And that the person had bought her toys afterwards, and that she would sit on his lap and he would touch her.

At the conclusion of the trial, the jury found Ely guilty of lewd conduct with a minor under sixteen. Ely appeals.

## II.

## ANALYSIS

Ely asserts the district court abused its discretion by allowing the jury to consider Borgquist's testimony about Detective Lau's out-of-court statement because it constituted

2

inadmissible hearsay. The State argues the statement was properly admitted under I.R.E. 803(4), and that even if the statement should not have been admitted, any alleged error was harmless.

We need not decide whether Borgquist's testimony was erroneously admitted because error is not reversible unless it is prejudicial. *State v. Stell*, 162 Idaho 827, 830, 405 P.3d 612, 615 (Ct. App. 2017). Where a criminal defendant shows an error based on a contemporaneously objected-to, non-constitutional violation, the State then has the burden of demonstrating to the appellate court beyond a reasonable doubt the error did not contribute to the jury's verdict. *State v. Montgomery*, 163 Idaho 40, 46, 408 P.3d 38, 44 (2017). Thus, we examine whether the alleged error complained of in the present case was harmless. *See id.* Harmless error is error unimportant in relation to everything else the jury considered on the issue in question, as revealed in the record. *State v. Garcia*, 166 Idaho 661, 674, 462 P.3d 1125, 1138 (2020). This standard requires weighing the probative force of the record as a whole while excluding the erroneous evidence and at the same time comparing it against the probative force of the error. *Id.* If the error's effect is minimal compared to the probative force of the record establishing guilt beyond a reasonable doubt without the error, then the error did not contribute to the verdict rendered and is harmless. *Id.* The reviewing court must take into account what effect the error had, or reasonably may have had, on the jury in the context of the total setting and in relation to all else that happened, which necessarily includes the evidence presented. *Kotteakos v. United States*, 328 U.S. 750, 764 (1946).

Even if the challenged testimony was erroneously admitted, the State asserts that any probative force it may have had was minimal because the testimony was cumulative, and thus, when weighed against the evidence without the error, it did not contribute to the verdict obtained beyond a reasonable doubt. Accordingly, the State contends the error was harmless. Ely asserts the State has not shown that admission of the hearsay statement did not contribute to the jury's verdict and has therefore failed to demonstrate the district court's ruling was harmless beyond a reasonable doubt.

We first consider the probative force of Borgquist's challenged statement. Ely was charged with three alternate bases for committing lewd conduct: manual-genital and/or oral-genital contact, and/or rubbing J.M.'s buttocks. Ely acknowledges that J.M.'s testimony during the trial and during the CARES interview, if believed by the jury, was sufficient to establish Ely committed oral-genital contact and rubbed J.M.'s buttocks. Notwithstanding J.M's testimony, Ely asserts that the additional evidence presented during the trial was "less than compelling" and of "questionable

3

strength." The probative force of Borgquist's statement is minimal given Ely's concession regarding J.M.'s testimony. J.M.'s unchallenged testimony, if believed by the jury, provided sufficient evidence that Ely committed the charged offense even without consideration of Borgquist's challenged statement.

Next, we consider the probative force of the statement when weighed against the evidence in the case, excluding the statement. Because each piece of the statement was separately admitted as evidence at trial without objection, Borgquist's testimony that Detective Lau conveyed this information to Borgquist is merely cumulative of the other evidence presented in the case and, therefore, is of little, if any, probative value. For example, J.M. testified at trial that Ely "molested me" and touched and licked her "private parts" with his mouth. The State admitted the video recording of the CARES interview without objection. During the CARES interview, J.M. disclosed the conduct giving rise to the charges, including the oral-genital contact and Ely's touching of her buttocks. Grandmother testified that she conveyed J.M.'s statements to law enforcement. Grandmother testified that when J.M. returned home from staying with Coleman and Ely, J.M. was abnormally quiet and showed her a new toy that Ely had bought her. The State offered Exhibits 6 through 9, which are the drawings and writings J.M. made for Grandmother the night after the abuse occurred. The exhibits were admitted without objection. Exhibits 6 and 7 are drawings depicting Ely's conduct and Exhibits 8 and 9 are writings by Grandmother and J.M. describing Ely's oral-genital contact with J.M.

Multiple law enforcement officers testified regarding the gathering, preserving, and testing of J.M.'s clothing, including testing for amylase and DNA. The scientific evidence in the case indicated that both pairs of J.M.'s underwear tested negative for semen but positive for the enzyme amylase, which is found in saliva, vaginal fluid, and breast milk, although the precise source of the amylase could not be identified with any certainty. Similarly, DNA testing on one pair of J.M.'s underwear "indicated a mixture of DNA assumed to be from two individuals." One source of the DNA was attributable to J.M. The other source of DNA indicated a partial DNA profile from a single male or male lineage, which indicated Ely or his paternal line could be potential sources. The biologist explained that "you would expect to see that DNA profile [in] approximately 1 in 1, 909 males just in general in the population."

Dr. Cox, a pediatrician and medical director of the CARES facility testified about common acute behavioral changes seen in child sexual abuse victims. Dr. Cox testified that he had observed

4

J.M.'s CARES interview, conducted a medical examination of J.M., and reviewed her medical and social history. Dr. Cox explained that J.M.'s social history indicated that J.M. had undergone several behavioral changes and explained, "It's not uncommon to see those type of drastic behaviors and concerns" in cases involving children who have been sexually abused. Dr. Cox also said that the symptoms of pain J.M. said she experienced during the sexual abuse were consistent with the nature of the abuse she reported.

The State also introduced prior testimony from Mark McCullough, which had been given during a preliminary hearing in a separate case in which Ely was charged with soliciting McCullough to kidnap or murder J.M. and/or her guardians. The parties stipulated that McCullough died before trial, and Ely did not object to the admission of the prior testimony. McCullough testified that in February 2021, Ely told him he had "some charges coming down the pike on a child molestation charge" and that he would "like to have it taken care of." McCullough asked Ely what he meant, and Ely said he wanted J.M., her grandmother, and an uncle killed or kidnapped. McCullough testified that about one week later, he had another conversation with Ely and Ely offered to give McCullough two trucks if he made J.M. and her relatives "disappear." McCullough disclosed the conversations and provided a statement to the Ada County Sheriff's Department. With the assistance of law enforcement, McCullough made recorded phone calls to Ely. In one of the phone calls, McCullough told Ely he was "ready to take care of business for [him]" and that he had a friend who would help "dispose of the bodies." Ely responded, "Okay. So we have to talk about this on another--." McCullough asked Ely if the trucks were still part of the deal and Ely said, "I've got to think about this, man. I want to do it right."

In light of the above, the challenged testimony was cumulative and had little, if any, probative value in relation to the other evidence presented to and considered by the jury. Weighing the probative value of the challenged testimony against the probative force of the record as a whole while excluding the erroneously admitted evidence and at the same time comparing it against the probative force of the error, this Court concludes the admission of the challenged testimony did not contribute to the verdict rendered. Consequently, any error in admitting the challenged testimony is harmless.

## IV.

## CONCLUSION

This Court need not decide whether the district court erred in admitting the challenged testimony because any error in doing so was harmless. Consequently, Ely's judgment of conviction for lewd conduct with a minor under sixteen is affirmed.

Chief Judge LORELLO and Judge BRAILSFORD **CONCUR**.