**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 51754**

| | |
|---|---|
| STATE OF IDAHO, | ) |
| | ) **Filed: May 18, 2026** |
| Plaintiff-Respondent, | ) |
| | ) **Melanie Gagnepain, Clerk** |
| v. | ) |
| | ) |
| MICHAEL JAMES HINKEL, | ) |
| | ) |
| Defendant-Appellant. | ) |
| | ) |

Appeal from the District Court of the Seventh Judicial District, State of Idaho, Bingham County. Hon. Alan C. Stephens, District Judge.

Judgment of conviction for attempted strangulation, <u>vacated</u> <u>and</u> <u>case</u> <u>remanded</u>.

Erik R. Lehtinen, State Appellate Public Defender; Ben P. McGreevy, Deputy Appellate Public Defender, Boise, for appellant.

Hon. Raúl R. Labrador, Attorney General; Mark W. Olson, Deputy Attorney General, Boise, for respondent.

_____

LORELLO, Judge

Michael James Hinkel appeals from his judgment of conviction for attempted strangulation. For the reasons set forth below, we vacate Hinkel's judgment of conviction and remand for a new trial.

## I.

## FACTUAL AND PROCEDURAL BACKGROUND

Hinkel and the victim were in a dating relationship and lived together. Hinkel and the victim had an argument. A security camera in the living room of the residence recorded part of the incident, and the argument later continued into the bedroom where no cameras were present. Evidence at trial indicated that, while in the bedroom, Hinkel struck the victim on the nose, grabbed her by the throat, and pushed her up against a window. In response, the victim kicked Hinkel in

1

the groin, causing him to release his grip and enabling the victim to leave the residence. As the victim left, Hinkel followed; this was captured by the security camera. The victim subsequently drove to the police station where she reported the incident. An officer took several photographs of the victim's face and neck. Later, a second officer responded to the police station. Officers contacted and interviewed Hinkel who initially denied that any physical altercation occurred. Hinkel also told the officer that the victim "had choked herself" in the past and that "she causes herself to have red marks when she wants to get him in trouble."

The State charged Hinkel with attempted strangulation and domestic battery. Hinkel pled not guilty, and the case proceeded to trial. At trial, both officers testified that they saw redness and finger marks on the victim's neck, which they interpreted as evidence of attempted strangulation. Hinkel objected, arguing that the officers' testimony constituted expert testimony for which no appropriate disclosures had been made prior to trial. The district court found the officers' testimony admissible and overruled Hinkel's objections. A jury found Hinkel guilty of attempted strangulation (I.C. § 18-923) and acquitted him of domestic battery. Hinkel appeals.

## II.

## STANDARD OF REVIEW

The decision to admit opinion testimony, whether lay opinion or expert opinion, rests within the discretion of the lower court, while the determination of its weight lies with the jury. *State v. Smith*, 170 Idaho 800, 814, 516 P.3d 1071, 1085 (2022). When a trial court's discretionary decision is reviewed on appeal, the appellate court conducts a multi-tiered inquiry to determine whether the trial court: (1) correctly perceived the issue as one of discretion; (2) acted within the boundaries of such discretion; (3) acted consistently with any legal standards applicable to the specific choices before it; and (4) reached its decision by an exercise of reason. *State v. Herrera*, 164 Idaho 261, 270, 429 P.3d 149, 158 (2018).

## III.

## ANALYSIS

Hinkel argues the district court erred when it permitted the officers to testify "on attempted strangulation because the State never disclosed them as expert witnesses." According to Hinkel, the officers testified as experts because they "applied their training and experience to form the opinion that the marks on" the victim's neck "appeared to be marks of attempted strangulation."

2

In response, the State argues that the evidence Hinkel challenges was not expert testimony and therefore did not need to comply with the applicable pretrial disclosure requirements. Alternatively, the State asserts that any error in admitting the evidence was harmless. We hold that the district court erred in admitting portions of the officers' testimony. We further hold that the error was not harmless.

A.      **Officers' Testimony**

Idaho Rule of Evidence 701 governs opinion testimony by lay witnesses and provides:

> If a witness is not testifying as an expert, testimony in the form of an opinion or inference is limited to one that is:
> (a)      rationally based on the witness's perception;
> (b)      helpful to clearly understanding the witness's testimony or to determining a fact in issue; and
> (c)      not based on scientific, technical, or other specialized knowledge within the scope of Rule 702.

Idaho Rule of Evidence 702 governs expert witness opinion testimony and states:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue.

Pursuant to I.C.R. 16(b)(7), the State must disclose, on written request of the defendant, a written summary or report of any expert testimony it intends to introduce at trial.

A lay witness may testify to an opinion or inference only if it is rationally based on a witness's perception and if it is not reached through a special mode of reasoning, i.e., the application of scientific, technical, or other specialized knowledge within the scope of I.R.E. 702. *Smith*, 170 Idaho at 817, 516 P.3d at 1088. When either element is missing, if the opinion is to be admitted at all, it must satisfy the requirements for expert testimony. *Id*. In *Smith*, the Idaho Supreme Court explained that lay opinion testimony is based on the ordinary experience of the average person and results from a process of reasoning familiar in everyday life. *Id*. The Court emphasized that the testimony must be able to be drawn following observation by any person possessing a generally present background, i.e., common knowledge. *Id*.

In this case, the victim met with two officers at the police station when she reported the incident involving Hinkel. The first officer spoke with the victim and photographed her neck, and the second officer arrived shortly thereafter. At trial, the first officer was shown the photographs

3

he took of the victim.  According to the first officer, he noticed the victim "had red marks around her neck" that were "very prominent."  Hinkel interjected, and argued that, although the first officer could testify that "he saw redness" on the victim's neck, the officer could not interpret the cause of the redness because he was not disclosed as an expert witness.  In response, the prosecutor argued that the first officer would not testify as an expert witness and instead would "be treated as a lay witness."  According to the prosecutor, lay witnesses "are allowed to give their opinions" under the applicable rules.  Hinkel countered that the first officer would be allowed to offer his opinion "only to the degree [a lay witness] would be able to do so otherwise [it is] speculation."  The district court made the following determination:

| [COURT]: | I agree with defense counsel.  I think you can ask [the officer] if this--if he took the pictures, why he took the pictures. |
| [PROSECUTOR]: | Well, can I get into asking him what the red marks look like? |
| [COURT]: | Yeah, you can ask him what they look like. |

The first officer reviewed the photographs and testified as follows:

| [PROSECUTOR]: | Why did you take these photos? |
| [FIRST OFFICER]: | I took those photos because they are [sic] evidentiary value of a crime that happened. |
| [PROSECUTOR]: | What crime? |
| [FIRST OFFICER]: | *It appeared to me it was marks of attempted strangulation.* |
| [HINKEL]: | Your honor, I would object on [I.R.E.] 702 and speculation. |
| [PROSECUTOR]: | I asked him--you said I could ask why he took the pictures, your Honor. |
| [COURT]: | Overruled. |
| [PROSECUTOR]: | What does the--on her neck, what do the marks look like? |
| [HINKEL]: | I object on speculation and [I.R.E.] 702, your Honor. |
| [COURT]: | Overruled. |
| [PROSECUTOR]: | I'll ask the question again:  What do those marks on her neck look like? |
| [FIRST OFFICER]: | On the left side of her neck it looked like a thumbprint by her ear and on the right side of her neck looked like finger marks. |
| . . . . | |
| [PROSECUTOR]: | What did you suspect when [the victim] walked in the door [of the police station]? |

4

| | |
|---|---|
| [FIRST OFFICER]: | When she walked in the door and there was red on her neck, I definitely think there was some kind of attack, some kind of issue where she had gotten assaulted. |
| [PROSECUTOR]: | So maybe not necessarily strangulation, but some kind of physical altercation? |
| [FIRST OFFICER]: | Yes, sir. |
| [PROSECUTOR]: | And then you continued to take her statement, listen to her statement at least, and then take photos? |
| [FIRST OFFICER]: | Yes, sir. |
| [PROSECUTOR]: | And after all that, after listening to her statement, taking photos, looking more closely, you came to a conclusion? |
| [FIRST OFFICER]: | Yes, sir. |
| [PROSECUTOR]: | And what was that? |
| [FIRST OFFICER]: | *That there was an attempted strangulation.* |

(Empasis added).

Thereafter, the second officer testified that, when he arrived at the police station, he noticed that the victim was emotional and appeared to have been crying. The second officer also testified that he observed the red marks around the victim's neck, as well as a cut on her nose. The prosecutor asked the second officer to interpret the marks, prompting an objection from Hinkel. The district court overruled the objection and allowed the question "based on the same premise" it found permissible with the first officer. The second officer testified:

| | |
|---|---|
| [PROSECUTOR]: | [At the police station] when you're examining [the victim], what did the marks look like to you? |
| [SECOND OFFICER]: | *Looks like--it looked to me like she had had her neck compressed or had--somebody had tried to choke her, strangle her, yes.* |
| [PROSECUTOR]: | Is there anything on the neck that stuck out to you that supports that? |
| [SECOND OFFICER]: | Yeah, the red marks on both sides of her neck. |
| . . . . | |
| [PROSECUTOR]: | *The markings on her neck was that correspond--or was that consistent with attempt [sic] strangulation cases*? |
| [SECOND OFFICER]: | *Yes.* |
| [PROSECUTOR]: | *Her story that she gave you, was that consistent with attempt [sic] strangulation cases*? |
| [SECOND OFFICER]: | *It was.* |
| [PROSECUTOR]: | Did her story match her markings? |
| [SECOND OFFICER]: | They did, and also her mannerisms while she was speaking with me, she was coughing. And, you know, in my experience that's--if somebody has their windpipe closed |

off or cutoff, that's one of the things I've witnessed to see [sic] or felt myself if I've been in that situation.

(Empasis added).

Hinkel objected to the second officer's testimony regarding his interpretation of the victim's coughing, asserting the second officer's answer called for speculation. The district court disagreed, finding the testimony admissible because the second officer spoke to his own personal experience.

On appeal, Hinkel asserts the district court abused its discretion in admitting portions of the officers' testimony at trial. Specifically, Hinkel argues the testimony from the officers indicating that the redness and finger marks on the victim's neck were consistent with attempted strangulation was expert testimony and that "permitting them to testify without full disclosure as experts was an abuse of discretion." According to Hinkel, the officers testified as experts because they "applied their training and experience to form the opinion that the marks on" the victim's neck "appeared to be marks of attempted strangulation," one of the charged offenses. Hinkel also challenges the second officer's testimony that the victim's coughing while at the police station was consistent with somebody who has had their "windpipe closed off or cutoff." The State responds that the district court acted within its discretion because the challenged testimony was "not based upon specific, technical, or other specialized knowledge within the scope of applicable expert witness disclosure requirements." We hold that the district court abused its discretion by allowing the officers to testify as to their interpretation that the marks on the victim's neck were the result of attempted strangulation.

Our holding is guided by the Idaho Supreme Court's decision in *State v. Frandsen*, ___ Idaho ___, 581 P.3d 319 (2025). In *Frandsen*, the appellant was found guilty of two counts of lewd conduct with a minor. At trial, the jury heard testimony from a forensic interviewer who interviewed one of the victims. More specifically, the witness testified concerning her process for conducting forensic interviews with children. The appellant objected to the testimony, arguing that the witness was testifying as an expert witness despite not being disclosed as one. The trial court disagreed and allowed the witness, "based on her training and experience, to testify as a fact witness regarding the procedures she used in the forensic interview." *Id*. at ___, 581 P.3d at 326. The witness subsequently testified about the interviews she conducted with the victim. On appeal,

6

the appellant argued that the witness testified as an expert because the testimony was based upon specialized knowledge or training. Because the State failed to properly disclose the witness as an expert, the appellant asserted that the trial court erred in admitting the testimony. The Court agreed and held that the trial court erred in allowing the witness to testify as an expert witness, "despite her non-disclosure as such." *Id*. at ___, 581 P.3d at 340. While the witness "properly testified as a fact witness when she described her job and discussed how she conducts her interviews," the Court held that the witness ventured "into the realm of an expert witness when she testified about what 'the research shows' and the scientific basis for why she asks questions in a certain manner." *Id*. According to the Court, "this is precisely the type of 'scientific, technical, or other specialized knowledge' that implicates Idaho Rule of Evidence 702." *Frandsen*, ___ Idaho at ___, 581 P.3d at 340. The Court noted that this was "a close call" and that "this issue could have been avoided had the State simply listed [the witness] as an expert witness." *Id*.

The Court's decision in *State v. Dacey*, 169 Idaho 102, 491 P.3d 1205 (2021) is also instructive. In that case, the trial court permitted an officer, who was trained as a drug recognition expert, to testify as a lay witness about the physical indicators a person exhibits while on the "downside" from methamphetamine use. The appellant argued that the officer testified as a nondisclosed expert witness because the officer's conclusion about the appellant's impairment was based on the application of the officer's specialized training, knowledge, and experience--the very definition of an expert under I.R.E. 702. The Court agreed and concluded that the officer's "testimony--especially her characterization of 'downside impairment'--was a far cry from a passive analysis based on common sense" and was therefore not opinion testimony from a lay witness. *Dacey*, 169 Idaho at 110, 491 P.3d at 1213. Instead, the Court determined that "the State presented [the officer's testimony] as one in which [the officer's] expertise played the pivotal role." *Id*. Specifically, the Court noted the officer's testimony defining a drug recognition expert as an officer who receives specialized training "in recognizing the impairment caused by certain types of drugs and how that would affect a person's ability to drive a motor vehicle." *Id*. According to the Court, the officer's description of a drug recognition expert mirrored I.R.E. 702's definition of an expert. *Dacey*, 169 Idaho at 110, 491 P.3d at 1213. Because the officer "applied her training and knowledge to the totality of the circumstances in order to form *her own opinion*," the Court held that the officer's "trial testimony was inarguably that of an expert witness." *Id*. at 110-11,

491 P.3d at 1213-14. As a result, the Court held that the trial court erred in permitting the witness to testify without full disclosure as an expert. *Id*. at 111, 491 P.3d at 1214.

A review of the record in this case shows that both officers testified that, based on their training and experience, they recognized the redness and finger marks on the victim's neck to be consistent with attempted strangulation. Specifically, the first officer testified as follows regarding his training in identifying domestic violence and attempted strangulation:

| | |
|---|---|
| [PROSECUTOR]: | So let's talk a little more about POST [academy training]. POST, do you just talk--learn how to work a radar gun? |
| [FIRST OFFICER]: | No. |
| [PROSECUTOR]: | Does that include domestic violence? |
| [FIRST OFFICER]: | Yes, it does. |
| [PROSECUTOR]: | Can you go into that training a little bit more? |
| [FIRST OFFICER]: | With domestic violence training we do scenarios. We do classroom-based training where we are given examples of victims and other special situations that involve domestic violence. |
| [PROSECUTOR]: | Does that include photos? |
| [FIRST OFFICER]: | Yes. |
| [PROSECUTOR]: | Now, does that include attempted strangulation? |
| [FIRST OFFICER]: | It does. |
| [PROSECUTOR]: | In your training were you shown photos of past attempted strangulation cases? |
| [FIRST OFFICER]: | Yes. |
| [PROSECUTOR]: | Were you trained how to identify attempted strangulation? |
| [FIRST OFFICER]: | Yes. |

Similarly, the second officer testified that he received "similar training" to that described by the first officer. Therefore, the officers' training in identifying domestic violence and attempted strangulation played a pivotal role in the officers' testimony. Much like the officer in *Dacey*, the officers here applied their training and knowledge to the totality of the circumstances in formulating their opinions and interpreting the redness and marks on the victim's neck as being consistent with attempted strangulation. As a result, the officers' testimony was based on the type of "technical or other specialized knowledge" that falls within the purview of I.R.E. 702. Because the officers testified as expert witnesses, we conclude that permitting them to testify without full disclosure as such was an abuse of discretion.

**B.      Harmless Error**

Error is not reversible unless it is prejudicial. *State v. Stell*, 162 Idaho 827, 830, 405 P.3d 612, 615 (Ct. App. 2017). Where a criminal defendant shows an error based on a contemporaneously objected-to, nonconstitutional violation, the State then has the burden of demonstrating to the appellate court beyond a reasonable doubt the error did not contribute to the jury's verdict. *State v. Montgomery*, 163 Idaho 40, 46, 408 P.3d 38, 44 (2017). Thus, we examine whether the alleged error complained of in the present case was harmless. *See id.* Harmless error is error unimportant in relation to everything else the jury considered on the issue in question, as revealed in the record. *State v. Garcia*, 166 Idaho 661, 674, 462 P.3d 1125, 1138 (2020). This standard requires weighing the probative force of the record as a whole while excluding the erroneous evidence and at the same time comparing it against the probative force of the error. *Id.* If the error's effect is minimal compared to the probative force of the record establishing guilt beyond a reasonable doubt without the error, then the error did not contribute to the verdict rendered and is harmless. *Id.* The reviewing court must take into account what effect the error had, or reasonably may have had, on the jury in the context of the total setting and in relation to all else that happened, which necessarily includes the evidence presented. *Kotteakos v. United States*, 328 U.S. 750, 764 (1946).

The State asserts that, if the district court erred, any error was harmless, citing "substantial other evidence of Hinkel's guilt that was presented at trial." Specifically, the State cites the victim's testimony describing the incident, which the living room security camera partially corroborated; the photographs of the victim's neck taken by the first officer; and the officers' testimony on cross-examination indicating they were not experts in strangulation or any other medical or forensic discipline. We disagree that this evidence supports a conclusion that the error was harmless.

The probative force of the error regarding the officers' testimony was not minimal. The record indicates that there were three witnesses who testified at trial--the victim and both officers. As we have concluded, both officers were erroneously permitted to offer expert testimony that there was an attempted strangulation of the victim. Additionally, the prosecutor's closing arguments at trial illustrate the State's reliance on the officers' testimony. Specifically, the prosecutor told the jury it "heard two separate police officers testify that the marks on [the victim's]

9

neck were consistent with attempted strangulation investigation, consistent with what they saw in their past." While the prosecutor also specified that the officers were "not doctors" or "forensic scientists," the prosecutor stressed the importance of the testimony by reminding the jury that they are "police officers" who "investigate crimes for a living." "This is what they do"--the prosecutor continued--"They saw marks on the neck. They heard [the victim's] story. They investigated it. They corroborated it."

Moreover, the district court's decision allowing the officers to testify to opinions based on expertise, as defined in I.R.E. 702, without the appropriate disclosures affected Hinkel's opportunity to challenge the officers' testimony on cross-examination. The Court has determined that "the point of disclosing expert witnesses prior to trial is fairness" and that "the mere opportunity to cross-examine is often not enough; it must be an opportunity to *effectively* cross-examine." *Dacey*, 169 Idaho at 113, 491 P.3d at 1216. Refuting expert testimony "requires preparation in order to properly examine the basis of the supposed expertise, find counter-examples, challenge the qualifications of a supposed expert," and potentially "call a defense expert to provide a contrary opinion." *Id.* Here, by allowing the officers to testify as to their expertise while cloaked as lay witnesses, the district court prevented Hinkel from a fair opportunity to: (1) challenge the substance and specialized knowledge of the officers' opinions; (2) question the officers' qualifications; and (3) present his own expert testimony to rebut the officers' conclusions that the marks on the victim's neck were indicative of an attempted strangulation. When the probative force of the error is compared to the weight of the other evidence the jury considered at trial, we cannot say that the error did not contribute to the verdict rendered. As a result, the State has not met its burden of showing that the district court's error in permitting the officers to offer expert opinion testimony was harmless beyond a reasonable doubt.

## IV.

## CONCLUSION

The district court erred when it allowed the officers to testify regarding their interpretations of the marks on the victim's neck as evidence of attempted strangulation because the officers were not disclosed as expert witnesses. Additionally, because the probative force of the error regarding the officers' testimony was not minimal in relation to everything else the jury considered on the

issue in question, the error was not harmless.  Accordingly, Hinkel's judgment of conviction for attempted strangulation is vacated and we remand for a new trial.

Chief Judge TRIBE and Judge HUSKEY, **CONCUR**.